IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Rachelle Ellen Falls, | ) | Civil Action No. 8:14-cv-00195-RBH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be affirmed.

**PROCEDURAL HISTORY**

On June 29, 2010, Plaintiff filed applications for DIB and SSI, alleging a disability

beginning July 11, 2009.  [R.147–57.]  The claims were denied initially and upon

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

reconsideration by the Social Security Administration ("the Administration"). [R. 119–23.] Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on May 9, 2012, ALJ Ivar E. Avots held a hearing on Plaintiff's claims. [R. 69–113.]

On June 28, 2012, the ALJ issued his decision, finding Plaintiff not disabled. [R. 31–42.] At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on June 30, 2014, and had not engaged in substantial gainful activity since July 11, 2009, the alleged onset date. [R. 33, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: bipolar disorder, panic disorder, and borderline personality disorder. [R. 33, Finding 3.] At Step 3, the ALJ determined Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments. [R. 33–37, Finding 4.] The ALJ specifically considered Listings 12.04, 12.06, and 12.08. [*Id.*]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels. She has some mental limitations but can concentrate, persist and work at pace to do simple, routine, repetitive work at 1–2 step instructions for extended periods say 2-hour periods in an 8-hour day. She can interact occasionally with the public, and interact appropriately with co-workers and supervisors at a non-production, non-fast paced work, no teamwork, stable routine setting.

[R. 37, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable of performing her past relevant work as a teacher. [R. 40, Finding 6.] Considering

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Plaintiff's age, education, work experience, and RFC, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. 40, Finding 10.] Consequently, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from July 11, 2009, through the date of the decision, nor was she entitled to SSI based on her June 29, 2010 application.  [R. 41.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council [R. 24–27], which denied review on November 27, 2013  [R. 1–7].  Plaintiff commenced an action for judicial review in this Court on January 23, 2014.[4]  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains a legal error warranting the reversal and remand of the case.  [Doc. 14 at 1.] Specifically, Plaintiff contends the ALJ

1.  improperly ignored work-preclusive limitations from the opinion of Plaintiff's treating physician [*id.* at 17–22]; and

2.  erred in failing to consider that Plaintiff was disabled for at least a closed period of time  [*id.* at 23–24].

The Commissioner contends the ALJ's decision should be affirmed because substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not render her incapable of performing all work-related activities.  [Doc. 15 at 1.]  Specifically, the Commissioner contends the ALJ reasonably gave little weight to the consultative examination report of Ronald Thompson, Ph.D. [*Id.* at 9–13.]  The Commissioner failed to

---

[4]Plaintiff also filed a reply brief in this matter.  [Doc. 16.]  The arguments in the reply brief, however, mirror the arguments in the original brief and do not require any additional discussion.

3

address Plaintiff's argument with respect to Plaintiff being entitled to a closed period of disability.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to

determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).    Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).    On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").    After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.    *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

6

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five,

8

the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined

9

effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's

13

opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723

(4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

>This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
>...
>
>**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weighing of Treating Practitioner Opinion**

Plaintiff takes issue with the ALJ's weighing of the opinion of Ron O. Thompson, Ph.D. ("Dr. Thompson") arguing that the ALJ failed to understand the opinion, created inconsistencies with the opinion that did not support rejecting the opinion, and improperly rejected the opinion because it was based on a one-time examination. [Doc. 14 at 20–21.] Plaintiff contends the ALJ's reliance on other medical evidence of record, including the opinions of non-examining state agency examiners, did not provide sufficient support his rejection of Dr. Thompson's opinion. [*Id.* at 21–22.] The Commissioner contends the ALJ properly weighed the consultative exam of Dr. Thompson and that Plaintiff's argument is without merit. [Doc. 15 at 9.] The Commissioner also submits that the ALJ was permitted

to rely on the opinions of state agency examiners to support his findings where Dr. Thompson's opinion was unsupported by other record evidence. [*Id.* at 11–12.] The Court agrees with the Commissioner's argument.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527); *see also* 20 C.F.R. § 416.927. Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well
> supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other

18

> substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain RFC).

### *Dr. Thompson's Opinion*

Plaintiff saw Dr. Thompson on September 16, 2010 for a consultative exam with respect to her claim of disability based on "mood swings and bipolar." [R. 313.] Dr. Thompson noted that Plaintiff was appropriately dressed with a neat and well groomed appearance. [*Id.*] Dr. Thompson noted that Plaintiff maintained intermittent and fair eye

19

contact and shook her leg during most of the interview suggesting some anxiety. [*Id.*] She also appeared cooperative and her ambulation and posture appeared within normal limits, as did her psychomotor activity level. [*Id.*]

With respect to her mental status, Dr. Thompson noted Plaintiff presented with a combined mood of anxiety and depression and that her affect was somewhat agitated and labile. [*Id.*] Dr. Thompson described Plaintiff as whiny and sobbing dramatically because of "things that built up on [her]" back in 2006, when she had been hospitalized for two weeks. [*Id.*] Plaintiff was able to spell "world" backwards correctly and was alert and oriented in all spheres; she knew the names of the Presidents of the United States and displayed adequate insight and judgment; she did not admit to perceptual distortions or hallucination, but admitted to financial stressors even though her husband had a good job. [R. 314.] Plaintiff was able to count from 20 to 1 in eight seconds and to make some semi-difficult cash transactions, putting her intellect level in the average range. [*Id.*] Dr. Thompson noted Plaintiff appeared to be in mild-moderate psychiatric distress and a bit manipulative and histrionic. [*Id.*]

With respect to activities of daily living, Plaintiff reported that she helped around the house and helped her children with school work; was independent in all her daily activities; had friends at church, and went to the Jehovah's Witness Kingdom Hall at least once and sometimes several times a week. [*Id.*] Plaintiff reported she worked as a teacher in 2004 and from 2007 to 2008 but that emotional problems affected her performance, and she quit because she could not tolerate the stress. [*Id.*]

Dr. Thompson's diagnostic impressions were that Plaintiff expressed a long history of major depressive disorder and apparently had experienced some psychotic features in

20

the past although he saw none at the time of the interview. [R. 315.] Dr. Thompson noted that Plaintiff was obsessively ruminating about negativity, had difficulty shutting down her mind, and seemed unable to give herself any psychological relief. [*Id.*] Dr. Thompson opined that Plaintiff needs to be under the care of a mental health professional; was anxious and depressed with very minimal stress coping skills; and her psychological symptoms would be expected to intensify to the point of problems maintaining pace and persistence on a job. [*Id.*] Dr. Thompson doubted Plaintiff could maintain attention in a typical work environment for longer than several minutes. [*Id.*] Dr. Thompson concluded that, as she presented to him that day, Plaintiff seemed to have minimal control over her emotions, but he believed she could manage benefits if they were awarded. [*Id.*]

### ALJ's Weighing of Dr. Thompson's Opinion

In considering the opinion of Dr. Thompson, the ALJ explained that while Dr. Thompson reported in September 2010 that he doubted Plaintiff could maintain attention for longer than several minutes in a typical work environment, subsequent progress notes from Spartanburg Mental Health Center showed that her mental status examinations were normal in November and December 2011. [R. 36.] Although Dr. Thompson found Plaintiff unable to concentrate well enough to work, noting that she was histrionic and manipulative, her treating psychiatrist, Dr. Smith, reported in December 2011 that she had no mental status abnormalities and a Global Assessment of Functioning ("GAF") score of 60. [R. 38.] The ALJ explained the he gave full consideration to the opinion of Dr. Thompson that Plaintiff was unable to concentrate well enough to work on the date he saw her for a consultative examination, but also noted that this was a one-time examination and that the longitudinal evidence of record did not support any sustained impairment in her ability to

21

concentrate of a totally disabling degree. [R. 39.] The ALJ reported that he relied more

heavily on the opinions given by Dr. Xanthia Harkness ("Dr. Harkness")[9] and Dr. Philip

Walls ("Dr. Walls")[10] that Plaintiff was capable of concentrating well enough to perform work

---

[9]Dr. Harkness completed a Mental RFC for Plaintiff on September 28, 2010, considering the requirements of Listings 12.04, 12.06 and 12.08, and found Plaintiff was not significantly limited in her ability to:

1.    Remember locations and work-like procedures
2.    Understand and remember very short and simple instructions
3.    Carry out very short and simple instructions
4.    Perform activities within schedule, maintain regular attendance, and be punctual within customary tolerances
5.    Sustain an ordinary routine without special supervision
6.    Work in coordination with or proximity to others without being distracted by them
7.    Make simple work related decisions
8.    Complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods
9.    Ask simple questions or request assistance
10.   Accept instructions and respond appropriately to criticism from supervisors
11.   Get along with coworkers or peers without distracting them or exhibiting behavioral extremes
12.   Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness
13.   Respond appropriately to changes in work setting
14.   Be aware of normal hazards and take appropriate precautions
15.   Travel in unfamiliar places or use public transportation
16.   Set realistic goals.

Dr. Harkness found Plaintiff was moderately limited in her ability to:

1.    Understand and remember detailed instructions
2.    Carry out detailed instructions
3.    Maintain attention and concentration for extended periods
4.    Interact appropriately with the genera public

[R. 317–18.]

[10]Dr. Walls performed a case analysis on January 3, 2011, considering new evidence from Greenville Mental Health Center dated November 17, 2010, that indicated no change

within the assessed RFC. [R. 37.] Based on his finding that Plaintiff had moderate limitations in concentration, however, the ALJ also added the restriction that Plaintiff is unable to perform work in a fast paced, production, or teamwork setting. [R. 39.]

**Discussion**

A review of the ALJ's decision shows that the ALJ evaluated Dr. Thompson's opinion in accordance with 20 C.F.R. §§ 404.1527 and 416.927, and he adequately indicated and explained the weight he assigned to Dr. Thompson's opinion based on a lack of support in his treatment notes, and the lack of support in the longitudinal record. Plaintiff argues the ALJ misunderstood Dr. Thompson's opinion in interpreting his opinion to say Plaintiff could not maintain concentration for longer than several minutes in a typical workday when he actually opined Plaintiff could not maintain pace and persistence. [Doc. 14 at 20.] Plaintiff does not explain, however, how this alleged misunderstanding affected the ALJ's weighing of the opinion, and Plaintiff failed to show how this finding would affect Plaintiff's ability to perform work in accordance with the RFC findings. The evidence of record supports the ALJ's finding that Plaintiff can perform simple, routine tasks, and this restriction adequately accommodates Plaintiff's moderate restrictions in persistence and pace. *See Frasier v. Colvin*, 2014 WL 526400 (D.S.C. 2014) (noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks (citing *McDonald v. Astrue*, 293 Fed. App'x 941, 946–47 (3d Cir. 2008)).

Plaintiff also argues that the ALJ attempted to create an inconsistency in Dr. Thompson's opinion that did not support rejecting the opinion. [Doc. 14 at 20.] Plaintiff

and normal mental status and confirmed Dr. Harkness's September 2010 findings. [R. 326.]

23

contends that Dr. Thompson's notation that Plaintiff is "histrionic and manipulative" does not negate his opinion that Plaintiff needs to be under the care of a mental health professional and has a personality disorder that is consistent with disability. [*Id.*] The Court, however, does not read the ALJ's decision as finding inconsistencies in Dr. Thompson's opinion based on his finding that Plaintiff is "histrionic and manipulative." The ALJ expressly discounted Dr. Thompson's opinion because " the longitudinal evidence of record does not support any sustained impairment in her ability to concentrate of a totally disabling degree." [R. 39.] Plaintiff also argues the ALJ should not have discounted Dr. Thompson's opinion because he only performed a one-time examination. [Doc. 14 at 21.] However, the treatment relationship between the physician and Plaintiff is an appropriate factor to be considered in weighing the opinion. *Johnson*, 434 F.3d at 654. Thus, the Court finds no merit in Plaintiff's argument.

Plaintiff also contends that Dr. E. Freeman Smith's ("Dr. Smith's") December 2011 treatment record was not sufficient to support the rejections of Dr. Thompson's opinion. [Doc. 14 at 21.] Plaintiff argues that Dr. Smith's treatment notes give no direction indicating Plaintiff's ability to function in the work environment. [*Id.*] Plaintiff also contends the ALJ failed to explain away Plaintiff's numerous low GAF scores and mental status abnormalities. [*Id.* at 22.] Further, Plaintiff argues the ALJ was not entitled to rely on the opinions of state agency examiners because their opinions were provided without critical evidence such as Plaintiff's completed questionnaire, which supported Dr. Thompson's opinion. [*Id.*]

As an initial matter, the Court notes that Plaintiff failed to explain to the Court how the evidence that was unavailable to the state agency doctors negates or contradicts their

24

findings. Further, the fact that Dr. Smith did not provide an opinion regarding Plaintiff's ability to work does not mean the ALJ cannot rely on his medical findings during Plaintiff's routine mental exams in evaluating the consistency of Dr. Thompson's opinion with the record evidence. Lastly, Plaintiff's argument regarding her GAF scores is unavailing because the ALJ did not expressly rely on Plaintiff's GAF scores in evaluating Dr. Thompson's opinion. [*See* R. 39.] Accordingly, the Court finds the ALJ's weighing of Dr. Thomspon's opinion is supported by substantial evidence.

**Disability for Closed Period of Time**

Plaintiff argues the record shows that between Plaintiff's alleged onset date and Dr. Smith's examination, a period of more than 12 months, Plaintiff's GAF scores were between 40 and 55. [Doc. 14 at 23.] Plaintiff claims the ALJ erred by relying more heavily on the GAF score noted by Dr. Smith and rejecting the others. [*Id.*] As stated above, the Court finds Plaintiff's argument to be without merit as the ALJ did not expressly rely on GAF scores in either weighing evidence, evaluating Plaintiff's RFC, or considering Plaintiff's credibility.

The GAF score, standing alone, is of little significance to the ALJ as there is no indication of whether it applies to symptom severity or level of functioning or impairment in reality testing or communication or major impairment in several areas and, if in several areas, which areas, and if these areas impact basic work activities. *See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) (describing how the scale is to be used, e.g., the score reflecting the worse of symptom severity and functioning level). Here, the ALJ indicated he

25

> relied heavily on the report of her treating physician at the Spartanburg Mental Health Center, E. Freeman Smith, M.D., that her mental status was normal in December 2011, and her GAF 60 (Ex. 13F). Accordingly, I find that the claimant has not had any functional limitations related to her mental impairments which have precluded her from performing work within the assessed residual functional capacity for a period of twelve months or more since the alleged onset date.

[R. 37.]  This finding, however, was not the sole basis for the ALJ's finding Plaintiff was capable of working in accordance with the RFC.  The ALJ cited to Dr. Harkness's opinion that Plaintiff can do simple work with only occasional interaction with the public, Dr. Wall's consideration and adoption of this RFC on reconsideration, and the ALJ's finding that there was no evidence of significant deterioration of Plaintiff's mental status.  [*Id.*]  The ALJ concluded that "records from the mental health centers where [Plaintiff] has been treated do not document any sustained abnormalities on mental status examinations and support the conclusion that she appears to be responding well to treatment."  [R. 38.]

Contrary to her argument, Plaintiff's reliance on the existence of low GAF scores on various dates in 2009, 2010, and 2011 does not create a presumption of disability during the entire period at issue.  Courts in this district have consistently found that a "[p]laintiff's GAF score is only a snapshot in time, and not indicative of [a] long term level of functioning."  *See e.g., Parker v. Astrue*, 664 F.Supp.2d 544, 557 (D.S.C., 2009); *see also Beasley v. Astrue*, 2012 WL 707091, at *5 (E.D.N.C. Mar. 5, 2012) ("[N]either agency regulations nor case law requires an ALJ to determine the extent of a [plaintiff's] mental disability based entirely on GAF scores." (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))).  Further, Plaintiff provides the Court with no legal basis for finding her disabled

based on a "closed period of disability." According, the Court finds no merit in Plaintiff's allegation of error.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

**IT IS SO RECOMMENDED**.

<u>S/Jacquelyn D. Austin</u>
United States Magistrate Judge

July 31, 2015
Greenville, South Carolina