UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rachelle Falls, ) | Civil Action No.: 8:14-cv-00195-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court following the issuance of a Report and Recommendation ("R&R") by United States Magistrate Judge Jacquelyn D. Austin.[1] Plaintiff, Rachelle Falls, brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commission of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI). The Magistrate Judge recommended affirming the Commissioner's decision denying Plaintiff's claim for benefits.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI on June 29, 2010, alleging disability as of July 11, 2009. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). A hearing was held before the ALJ on May 9, 2012. Plaintiff, represented by an attorney, appeared and testified. A vocational expert also testified. The ALJ issued a decision on June 28, 2012, finding that Plaintiff was not disabled. The ALJ's findings are as follows:

---

[1] This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2).

1. The claimant meets the insured status requirements of the Social Security Act through June 20, 2014.

2. The claimant has not engaged in substantial gainful activity since July 11, 2009, the alleged onset date (20 C.F.R. 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe combination of impairments: bipolar disorder, panic disorder, and borderline personality disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  She has some mental limitations but can concentrate, persist and work at pace to do simple, routine, repetitive work at 1-2 step instructions for extended periods say 2-hour periods in an 8-hour day.  She can interact occasionally with the public, and interact appropriately with co-workers and supervisors at a non-production, non-fast paced work, no teamwork, stable routine setting.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on February 24, 1967 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has a college education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

>     claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2009, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

Tr. 33-41.

The ALJ's finding became the final decision of the Commission when the Appeals Council denied Plaintiff's request for further review on November 27, 2013. Plaintiff filed this action on January 23, 2014, seeking judicial review of the Commissioner's decision. [Compl., ECF #1]. Both Plaintiff and the Commissioner filed briefs, [ECF ##14, 15, 16]. The Magistrate Judge issued her Report and Recommendation ("R&R") on July 31, 2015, recommending that the Commissioner's decision be affirmed. [R&R, ECF #18]. Plaintiff filed timely objections to the R&R on August 16, 2015. [Plaintiff's Objections, ECF #19]. The Commissioner filed a response to Plaintiff's objections on September 10, 2015. [Defendant's Response to Plaintiff's Objections, ECF #23].

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541,

543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This

approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## ANALYSIS

In this appeal, Plaintiff raised two issues before the Magistrate Judge: 1) that the ALJ improperly ignored the opinion of Dr. Thompson; and 2) that the ALJ erred by failing to consider a closed period of disability based on Plaintiff's low GAF[2] scores between 2009 and 2011. The

---

[2] GAF score refers to the Global Assessment of Functioning numeric scale, which is used by mental health clinicians and physicians to rate an individual's social, occupational, and psychological functioning.

Magistrate Judge recommended affirming the ALJ's decision finding that substantial evidence supported the ALJ's weighing of Dr. Thompson's opinion. The Magistrate Judge also rejected Plaintiff's argument that the ALJ should have considered a closed period of disability based on Plaintiff's GAF scores concluding that GAF scores do not create a presumption of disability, offer only a snapshot of Plaintiff's functioning, and are not indicative of a long term level of functioning.

Plaintiff filed objections to the Magistrate Judge's Report and Recommendation arguing the ALJ erred by improperly evaluating Dr. Thompson's opinion and failing to consider a closed period of disability. In addition, Plaintiff argues that this case should be remanded under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), because the ALJ's hypothetical did not properly account for Plaintiff's moderate difficulties with concentration, persistence, or pace.

**I.      Dr. Thompson's Opinion**

Dr. Thompson provided a mental status evaluation of Plaintiff after examining her on one occasion, September 16, 2010. Dr. Thompson noted the following when reviewing Plaintiff's mental status:

> [Plaintiff] presents with the combined mood of anxiety and depression and affect was somewhat agitated and labile. She is whiny and sobbing rather dramatically making it difficult to understand her. She appears to be experiencing moderate amount of psychological turmoil and is quite vague in providing information about herself. She tends to ramble a little bit and reports that she had been depressed for a long time. She reported problems with depression that became more problematic for her with a postpartum depression after he 11-year-old daughter was born. She endorses no suicide attempts, but apparently has made one gesture in the past, but did not follow through with any attempts to harm herself. She reports that she was just upset at the time and "things that built up on me" back in 2006 and was hospitalized for two weeks at that point. She reports one other psychiatric hospitalization. She endorses frequent feelings of

uselessness and worthlessness that she states are strong along with feelings of guilt adding that she is "letting my family down." She reports some unusual dream state and feeling on unreality, particularly when just waking up in the morning, coming out of a deeper sleep. She also reports a history of banging her head and pulling her hair out and a lifelong problem with temper tantrums. Her guilty feelings are related to her frequent screaming and yelling at her husband and her children, and she began sobbing almost uncontrollably when discussing this. She reports recent suicidal ideation and occasion ruminations about it, but indicated that there were no plans or intentions and follows with "things would just be better [if] I weren't around."

She spells "world" backwards correctly and is alert and oriented in all spheres. She knew the name of the President of the United States and displayed adequate insight and judgment. She admits to no perceptual distortions or hallucination, but admits to financial stressors even though her husband has a good job. She reports last year running away from home because she could no longer take the stress of children and family life with all of her worry. As a teenager, she depicted herself as one who has low self-esteem, kept to myself, and was the oldest of five siblings.

She is able to count backwards from 20 to 1 in eight seconds and makes a semi-difficult cash transaction. She has difficulty remembering two out of three unrelated items immediately due to poor attention and concentration. Two similarities and two abstractions are completed adequately and estimated level of intellect appears to fall in the average range. She is experiencing considerable psychological turmoil and probably would benefit from a review of her medication and possibly a partial psychiatric outpatient program. She did appear in mild-moderate psychiatric distress and she did appear to be a bit manipulative and histrionic.

Tr. 313-314. In his diagnostic impressions, Dr. Thompson stated:

This lady expresses a long history of major depressive disorder and apparently, there have been some psychotic features in the past, although I see none today. She is also obsessively ruminating about negativity, has difficulty shutting down her mind, and seems unable to give herself any psychological relief. She appears to be quite anxious and in a great deal [of] psychological turmoil.

Tr. 315.  Dr. Thompson concluded his evaluation by stating:

> This 43-year-old lady appears in moderate psychiatric distress and in this clinician's view needs to be under the care of a mental health professional.  She is anxious and depressed with very minimal stress coping skills and psychological symptoms would be expected to intensify to the point of problems maintaining pace and persistence on a job, and I doubt if she could maintain for longer than several minutes in a typical work environment.  She seems to have minimal control over her emotions as she presents today, although I do believe she could manage benefits, if they are awarded her.

Tr. 315.

The ALJ evaluated Dr. Thompson's opinion and discussed the opinion in the residual functional capacity analysis.  Specifically, the ALJ stated:

> I have also given full consideration to the opinion of Dr. Thompson that the claimant was unable to concentrate well enough to work on the date he saw her for consultative examination.  Dr. Thompson also noted that she was histrionic and manipulative.  His was a one-time examination.  As previously noted, the longitudinal evidence of record does not support any sustained impairment in her ability to concentrate of a totally disabling degree.  Rather, progress reports show that her memory, attention, and concentration have largely been intact.  I have relied more heavily on the report of her treating psychiatrist, Dr. Smith, in December 2011 that she had no mental status abnormalities and a GAF of 60.  As previously noted, I have also relied heavily on the opinions of Dr. Harkness and Dr. Walls that the claimant is capable of concentrating well enough to perform work within the assessed residual functional capacity.  I have also added the restriction that she is unable to perform in a fast paced, production or teamwork setting.

Tr. 39.

When evaluating medical opinions, an ALJ should examine "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3)

the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). "[A]n ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, Civil Action No. 2:05CV00046, 2006 WL 2565245, at *8 (W.D.Va. 2006); *see also Bishop v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 65, 67 (4th Cir. 2014) (affirming ALJ's decision to afford no weight to the treating physician's opinion); *Dellinger v. Colvin*, No. 6:14-cv-1150-DCN, 2015 WL 5037942, at *8-9 (D.S.C. Aug. 26, 2015) (affirming ALJ's decision to afford no weight to the treating physician's opinion where the ALJ gave specific reasons for the weight given to the treating source's medical opinion, reasons that were supported by the evidence in the case record).

Plaintiff argues that the ALJ improperly attempted to create an inconsistency in Dr. Thompson's opinion by relying on the statement that Plaintiff was histrionic and manipulative. The ALJ, however, did not discount Dr. Thompson's opinion because of the notation that Plaintiff appeared "to be a bit manipulative and histrionic." Tr. 314. Rather, the ALJ discounted Dr. Thompson's opinion because "the longitudinal evidence of record does not support any sustained impairment in [Plaintiff's] ability to concentrate of a totally disabling degree." Tr. 39. Additionally, it would not have been improper for the ALJ to rely on Dr. Thompson's observation that Plaintiff appeared overly dramatic and manipulative. Plaintiff saw Dr. Thompson for a one-time consultation related to her disability application. To the extent Plaintiff appeared overly dramatic and manipulative to Dr. Thompson during this one-time disability consultation, the ALJ could have properly considered that observation to conclude that Plaintiff was exaggerating her symptoms.

Additionally, contrary to Plaintiff's assertion in his brief, Dr. Thompson does not mention histrionic personality disorder or imply that Plaintiff suffers from that disorder.

Plaintiff next argues that Dr. Thompson's opinion should not be discounted because he only performed a one-time examination. This argument is without merit. The treatment relationship is an acceptable factor for the ALJ to consider in weighing medical opinions under *Johnson*, 434 F.3d at 654.

Plaintiff argues that Dr. Smith's treatment record in December 2011 is an insufficient basis to reject Dr. Thompson's opinion. However, the consistency of Dr. Thompson's opinion with other evidence in the record is an appropriate factor to consider in determining the weight given to a medical opinion. *Id*.

Finally, Plaintiff argues that the opinions of the non-examining state agency examiners are not deserving of more weight than the opinions of Dr. Thompson. "In assessing whether there is substantial evidence, the reviewing court should not 'undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of' the agency." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). Here, Plaintiff invites the Court to reweigh the evidence, which it will not do.

The ALJ provided specific and legitimate reasons, supported by the record, for the weight given to Dr. Thompson's opinion. *See Bishop v. Commissioner of Social Sec.*, 583 Fed.Appx. 65, 67 (4th Cir. 2014) ("given the specific and legitimate reasons provided, the ALJ was permitted to reject the treating physician's opinion in its entirety"); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (finding no error in ALJ's decision not to give a treating physician's opinion controlling weight where specific and legitimate grounds were given); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir.

2003) (holding the ALJ was required to provide specific, legitimate reasons for rejecting treating physician's opinion); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) ("the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record"); *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1178 (E.D. Wash. 2011) (stating that "if the medical source is an examining or treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting an uncontradicted opinion"). Accordingly, the Court finds no error in the ALJ's residual functional capacity analysis or his decision to discount Dr. Thompson's opinion. Substantial evidence supports the ALJ's residual functional capacity determination and the weight given to Dr. Thompson's opinion.

## II.    *Mascio v. Colvin*

Plaintiff argues that this case is directly on point with *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and therefore requires remand. In *Mascio*, the Fourth Circuit held that remand was warranted, in part, because the ALJ's hypothetical question to the vocational expert failed to include (without explanation) the moderate limitation on the claimant's ability to maintain concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. In the key passage, the Fourth Circuit stated "we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work'. . . the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*.

In this case, at Step 3, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. Tr. 36. Plaintiff argues that remand is required because the ALJ

failed to account for Plaintiff's moderate difficulties in concentration, persistence, or pace in his hypothetical to the vocational expert and Plaintiff's residual functional capacity.

The hypothetical posed by the ALJ is as follows:

> [I]f I were to assume an individual that is now 45 years old, I believe. Has a college education, work history as documented and testified to. She would have no exertional limitation but would have some mental ones based on 8F. But in spite of these she could concentrate, persist, and work at pace to do simple, routine, repetitive tasks at one and two step instructions for extended periods, say two hour periods in an eight hour day. She could interact occasionally with the public and interact appropriately with co-workers and supervisors at a non-production pace. No fast paced type work such as team work in a stable routine setting. Well, her past work would be precluded, I guess, based on the skill demands. But would other work be available to her?

Tr. 107. To that question, the vocational expert answered that there would be jobs that would fall within those parameters, including an office helper, merchandiser marker, and inspector of electrical equipment. *Id*.

Contrary to Plaintiff's argument, a review of the ALJ's hypothetical and exhibit 8F, which the ALJ incorporated by reference, indicates that the ALJ properly accounted for each of Plaintiff's limitations, including moderate difficulties in concentration, persistence, or pace. Exhibit 8F is a mental residual functional capacity assessment and assessed the Plaintiff with a moderately limited ability to maintain attention and concentration for extended periods. *See* Tr. 317. This moderate limitation was incorporated into the hypothetical. As opposed to the hypothetical in *Mascio*, which said nothing about the claimant's mental limitations, the ALJ's hypothetical in this case accounted for each of Plaintiff's mental limitations.

The ALJ also accounted for Plaintiff's limitations in the area of concentration when determining Plaintiff's residual functional capacity. The ALJ noted Plaintiff's mental limitations but found that the Plaintiff could "concentrate, persist and work at pace to do simple, routine, repetitive work at 1-2 step instructions for extended periods say 2-hour periods in an 8-hour day." Tr. 37. The ALJ adequately addressed the Plaintiff's ability to stay on task by limiting the length of time that she could concentrate, persist, and work at pace to 2-hour periods in an 8-hour day. The RFC in *Mascio* failed to account for any such limitations. Accordingly, *Mascio* does not require remand of this case.

### III.    Closed Period of Disability

Finally, Plaintiff argues that the ALJ erred by failing to consider a closed period of disability based on Plaintiff's GAF scores, which fell between 40 and 55 in 2009, 2010, and 2011. The Court agrees with the Magistrate Judge's reasoning on this point. Courts in this district have consistently found that a plaintiff's GAF score "is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning." *Parker v. Astrue*, 664 F. Supp. 2d 544, 557 (D.S.C. 2009).

The ALJ reviewed Plaintiff's GAF scores along with the rest of the record and made the following observations:

> In October 2009, she complained of anxiety attacks and was visibly irritable. Her GAF was 50. Progress reports show that she was applying for disability and had secondary gain. In November 2009, she reported continued difficulty with depression and anxiety attacks. In January 2010, she reported that she continued to be depressed and hopeless and to have occasional suicidal ideation. By March 22, 2010, progress reports from the Greenville Mental Health Center show she was doing much better, was described as "perky," and denied having any suicidal ideation or psychotic features. Progress reports show that, she had better affect and was much less depressed. In June 2010, she reported that she had been

> doing well overall but that she was having hot flashes and mood swings, which the physician attributed it to possible menopause. Her attention, concentration, and memory were intact. She had good judgment and insight, euthymic mood, appropriate affect, and no hallucinations, delusions, or suicidal or homicidal ideation. Her mental status exam was essentially normal, and her GAF 55. Progress reports show she remained stabled in November 2010. Her mental status was normal, and her GAF was 55. . .
>
> January 2011 progress notes show that she was dysfunctional and crying. A mood stabilizer, Lamictal, was added to her medications regimen. Diagnoses were bipolar disorder, panic disorder, and borderline personality disorder. GAF was 40 and improved to 50 in March 2011. In May 2011, GAF dropped to 45. In October 2011, the claimant transferred her care to the Spartanburg Mental Health Center. . .GAF was 55. Her mental status examinations were normal in November and December 2011, and GAF was 60.

Tr. 34-35.

Based on the objective evidence, which shows a fluctuating condition between 2009 and 2011, and the normal mental status reports noted by the ALJ, it is clear that Plaintiff's GAF scores could not reasonably be considered conclusive evidence of disability during the proposed closed period. Substantial evidence supports the ALJ's conclusion that the longitudinal evidence of record does not support any sustained impairment of a totally disabling degree. Likewise, substantial evidence supports the ALJ's conclusion that the Plaintiff has not been under a disability, as defined in the Social Security Act, from July 11, 2009, through the date of this decision.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, Defendant's reply to the objections, and applicable law. For the foregoing reasons, the Court hereby overrules Plaintiff's objections and adopts and

incorporates by reference the Report and Recommendation of the Magistrate Judge. The Commissioner's decision is **AFFIRMED**.

    **IT IS SO ORDERED**.

September 29, 2015                                      s/ R. Bryan Harwell
Florence, South Carolina                      R. Bryan Harwell
                                                             United States District Judge